IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER RAE STUBBS-PRUITT,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

Defendant

Case No. 6:15-cv-00309-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Heather Rae Stubbs-Pruitt ("plaintiff") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

*Administrative History*

On November 17, 2011, plaintiff protectively applied for DIB and SSI, alleging a disability onset date of October 2, 2010. Tr. 13, 190-200. She later amended her onset date to January 1, 2006. Tr. 192. Her applications were denied initially and on reconsideration. Tr. 131-

1 – OPINION AND ORDER

47. Plaintiff thereafter timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 149-50. On October 9, 2013, ALJ John Michaelsen held a hearing, at which plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-71. On October 31, 2013, ALJ Michaelsen issued a decision finding plaintiff not disabled within the meaning of the Act from January 1, 2006, through the date of the decision. Tr. 13-23. After the Appeals Council declined her request for review, plaintiff filed a complaint in this Court. Tr. 1-3.

*Background*

Born in 1974, plaintiff was 32 years old on the alleged onset date. Tr. 219. She graduated from high school and attended college for three years. Tr. 225. She has past relevant work experience as a caregiver in an adult foster home. Tr. 22, 63. Plaintiff alleges that she is unable to work due to fibromyalgia, post-traumatic stress disorder ("PTSD"), anxiety, and depression. Tr. 224.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b) and 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d) and 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f) and 404.920(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-

3 - OPINION AND ORDER

42; 20 C.F.R. §§ 404.1520(g) and 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566 and 416.966.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2006. Tr. 15.

At step two, the ALJ determined plaintiff has the following severe impairments: fibromyalgia, obesity, anxiety disorder/PTSD, depressive disorder, and learning disorder (NOS). *Id.*

At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16. Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work during the relevant period. The ALJ found that plaintiff had the following residual functional capacity ("RFC"):

> [L]ight work . . . [i]n addition, the claimant is limited to occasional stooping, crouching, crawling, and kneeling. She is also limited to understanding, remembering, and carrying out simple, repetitive tasks requiring no more than occasional interaction with the general public.

Tr. 18.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 22.

At step five, based on the testimony of the VE, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national and local economy despite her impairments, such as office helper, library helper, and clerical helper. Tr. 23. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. *Id.*

*Discussion*

Plaintiff alleges that the ALJ erred by: (1) finding her not fully credible; (2) improperly assessing the medical opinions of John Ward, M.D. and Connie Hume-Rodman, M.D.; and (3) failing to establish plaintiff retains the ability to perform work in the national economy.

I.   Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments.

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . [or] other testimony that appears less than candid . . . ." *Id.* at 1284. However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nevertheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

5 - OPINION AND ORDER

Plaintiff first argues the ALJ erred in evaluating her physical impairments related to her fibromyalgia. Pl.'s Br. 14-15. The ALJ found, "it appears from the record that the claimant is not as limited as she has alleged[,]" and proceeded to identify instances where plaintiff's examination findings were "unremarkable," aside from positive tender point testing and reports of muscle spasms. Tr. 19; *see* tr. 337, 364, 366, 422, 426, 438, 470, 477. Indeed, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by the objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ noted plaintiff had normal findings regarding muscle strength, reflexes, tone and symmetry, and normal imaging of her lumbar spine and hips. Tr. 19. Further, the ALJ observed that treating physician Yon Zhu, M.D. reported mild fibromyalgia symptoms. *Id.*

Plaintiff contends the ALJ erred to highlight "intact reflexes and full strength[,]" because the findings are not relevant to her fibromyalgia claim. Pl.'s Reply 1. Plaintiff explains, "normal neurological findings or minimal disc degeneration do not conflict with her testimony that she is impaired by fibromyalgia pain." Pl.'s Br. 14. The court agrees the findings do not necessarily conflict with plaintiff's testimony, but it is unclear why the ALJ's mention of them benefits plaintiff's position. The ALJ simply observed that despite plaintiff's positive tender point testing evincing the presence of fibromyalgia, the other examination findings were essentially normal from a functional standpoint. *See* tr. 19. Plaintiff's argument would be helpful if it was determined plaintiff did not have fibromyalgia based on the findings cited by the ALJ, but this was not the case – the ALJ recognized fibromyalgia as a severe impairment at step two, thereby acknowledging it "significantly limits [her] ability to perform basic work activities." *Id.*; 20 C.F.R. §§ 404.1520(c) and 416.920(c). Even so, by definition, "severe impairment" does not

6 - OPINION AND ORDER

necessarily preclude gainful work. *Id.* Thus, it was not inappropriate for the ALJ to note that although plaintiff's "primary alleged limitations" are due to fibromyalgia symptoms, her examinations are otherwise relatively benign. Tr. 19.

The ALJ addressed plaintiff's allegations of pain caused by her fibromyalgia condition by referencing a May 2013 examination by Dr. Zhu, a rheumatologist. Dr. Zhu found plaintiff had "[p]ositive fibromyalgia tender points, 16/18, mild." Tr. 477. The ALJ interpreted the finding to mean Dr. Zhu reported "'mild' fibromyalgia symptoms." Tr. 19. Plaintiff contends the ALJ's interpretation is erroneous, arguing Dr. Zhu "did not say that [plaintiff's] condition was mild or dispute her pain reports, but only found, on that day, she had mild response to the tender points." Pl.'s Br. 14. In support, plaintiff asserts she need not show her impairment could reasonably be expected to cause the severity of the symptoms alleged, but only that it could reasonably have caused symptomatology to some degree. *Id.* (citing *Lingenfelter*, 504 F.3d at 1036. Indeed, an ALJ "may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." *Id.* (citing *Smolen*, 80 F.3d at 1282).

Here, however, the ALJ did not reject the symptom allegations simply because there was no showing that plaintiff's fibromyalgia could reasonably produce the degree of her symptoms as alleged; rather, the ALJ merely indicated Dr. Zhu found her symptoms were mild. Tr. 19. As the Commissioner notes, it is appropriate for the ALJ to consider medical opinions when evaluating a claimant's credibility – particularly the opinion of a rheumatologist evaluating fibromyalgia. Def.'s Br. 5-6; *Molina v. Astrue*, 533 F.3d 1155, 1161 (9th Cir. 2012); *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).

///

7 - OPINION AND ORDER

The thrust of plaintiff's argument is the ALJ's interpretation of Dr. Zhu's "mild" notation is incorrect. However, so long as the ALJ's finding is "supported by inferences reasonably drawn from the record[,]" the court must uphold the findings. *Batson*, 359 F.3d at 1193. In the relevant chart note, Dr. Zhu clearly indicated plaintiff's tender point testing was "mild." Tr. 477. As such, the court finds it was at least rational for the ALJ to interpret the chart note to mean plaintiff's fibromyalgia symptoms were mild. Moreover, although plaintiff contends the ALJ's interpretation is wrong, plaintiff does not provide any alternative explanation or evidence in support of her position. *See* Pl.'s Br. 14; Pl.'s Reply 3. Even if plaintiff presented an equally viable interpretation, the court would nonetheless be obliged to defer to the ALJ's finding. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Accordingly, the ALJ's interpretation of Dr. Zhu's chart note is free of legal error.

Plaintiff also disputes the import of Dr. Zhu's comment, "she does have improvement with marijuana[,]" regarding pain from fibromyalgia. Plaintiff contends that despite using marijuana, she continues to have "muscle aches, cramping, joint pain, and swelling." Pl.'s Reply 3-4. However, as plaintiff concedes, she reported to Dr. Zhu that marijuana use resulted in "significant pain relie[f] and improved sleep . . . ." Tr. 476. Although plaintiff argues medical marijuana did not fully alleviate her symptoms, the ALJ was within his authority to impugn plaintiff's credibility based on her reported pain relief. *Warre v. Comm'r of SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are adequately controlled with treatment are not disabling). Again, while plaintiff proffers an alternative explanation, the ALJ's finding is not irrational, as the apparent efficacy of marijuana use reasonably contradicts her current claims of nearly incapacitating pain. *See* tr. 19, 58-59, 253. Thus, the ALJ provided a valid interpretation of Dr. Zhu's findings and observations: plaintiff's fibromyalgia is mild, improves with treatment,

8 - OPINION AND ORDER

and is not as limiting as alleged. Tr. 19. The findings impugn plaintiff's credibility to the degree she alleges her symptoms are nearly incapacitating, immune to treatment, and completely preclude her from work.

The ALJ further discredited plaintiff for using a cane that was not prescribed to her. An ALJ may find that a claimant's use of non-prescribed assistive device detracts from her credibility. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Plaintiff presumably concedes the cane was not prescribed at the time of the administrative hearing, but explains her use of a cane was legitimate because Dr. Ward prescribed a cane two weeks thereafter. Pl.'s Br. 15; *see* tr. 506. The Commissioner notes the "interesting timing" of the prescription, inferring the cane prescription was procured in response to the adverse disability decision. Def.'s Br. 7-8. Further, the Commissioner contends plaintiff did not develop an abnormal gait until after the October 31, 2013 decision. *Id.*; tr. 523-5. The record supports the Commissioner's position. *Compare* tr. 530-32 (Oct. 3, 2013) *to* 523-35 (Nov. 8, 2013). Moreover, although he prescribed the cane, Dr. Ward noted plaintiff was more symptomatic on the left side, which did not correlate to her known conditions because her MRI showed a disc protrusion only on the right side. Tr. 524. Nevertheless, while the sudden appearance of the abnormal gait diagnosis may suggest an ulterior motive, the court also notes plaintiff reported decreased sensation in her left leg prior to the receiving the decision. Tr. 495, 531.

On balance, and considering the record as a whole, the court finds the ALJ did not legally err regarding the cane issue for the following related reasons. First, the ALJ utilized an acceptable method of credibility evaluation pursuant to *Chaudhry* and other Ninth Circuit precedent, which recognizes the ALJ's rationale as clear-and-convincing. *See Chaudhry*, 688 F.3d at 671 n.9 ("cane was prescribed only at Chaudhry's request"); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2001) ("record contains conclusory statements that Ms.

9 - OPINION AND ORDER

Thomas needed a cane"). Next, the ALJ's decision only addressed plaintiff's disability status through the date of the decision, and there was nothing to suggest a medical necessity for the cane prior to the post-decision development of abnormal gait. Tr. 23, 523.

Further, as mentioned above, Dr. Ward did not identify any medically determinable condition which necessitated the cane; the only associated diagnosis was "abnormality of gait." *See* tr. 506 ("Cane .... Dx 781.2 [abnormality of gait]"); tr. 524 ("the MRI findings do not specifically correlate to her current symptoms"); *see also* Social Security Ruling ("SSR") 96-9p *available at* 1996 WL 374185 at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need . . . and describing the circumstances for which it is needed."). The court also notes plaintiff's treating and examining physicians regularly recommended plaintiff increase her activity level, which suggests that plaintiff's gait abnormality is not severe enough to cause disability and/or be expected to persist for the statutory duration requirement. *See, e.g.*, tr. 471 ("increase your activity level"), 478 ("encouraged her to exercise regularly"), 498 ("reiterated importance of trying to be as physically active as possible").

Additionally, plaintiff never alleged having the condition of, or disability due to "abnormality of gait." *See* Pl.'s Br. 1 ("[plaintiff] is disabled by fibromyalgia pain, anxiety, depression, PTSD, a learning disorder and obesity"); Pl.'s Reply 1 ("[p]laintiff does not have a neurological condition"); tr. 224. Plaintiff has the initial burden to establish disability that can be expected to last at least twelve months, and the prescription of an assistive device, without more, does not meet this threshold. *Howard*, 782 F.2d at 1486; 42 U.S.C. § 423(d)(1)(A). Based on all

of the foregoing, the ALJ's stated rationale was valid, notwithstanding the post-decision evidence.[1]

The ALJ also found plaintiff provided inconsistent statements regarding her activities of daily living ("ADLs"). The ALJ noted that in her 2012 functional report, plaintiff indicated she was predominantly independent in self-care, able to prepare simple meals, go shopping, and drive a car; which he found contrary to her testimony during the hearing. Tr. 20, 254-55. During the hearing, however, plaintiff testified she required help getting out of bed, that her daughter prepares most meals, that she can shop but is exhausted for days afterward, and normally doesn't drive, but is able to do so when required. Tr. 46, 48-49, 52.

Independent review of the records cited by the ALJ reveal they are generally consistent with plaintiff's hearing testimony. For example, in 2012, plaintiff indicated she was not fully independent in personal care or meal preparation. Tr. 254-55. Additionally, it is unclear why the ALJ inferred plaintiff is no longer able to drive, as she testified to she driving herself to the hearing. Tr. 45-46. While her ability to drive may suggest greater functionality than alleged, it was nonetheless erroneous for the ALJ to find she provided inconsistent statements about her ability to do so. However, even assuming the ALJ's ADLs analysis did not meet the appropriate legal standard, other rationales provided were clear-and-convincing, and therefore the error is harmless. *Carmickle*, 533 F.3d at 1163.

The ALJ discredited plaintiff's testimony regarding her alleged limitations due to her mental impairments, including memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Tr. 257. The ALJ found that her allegations were "inconsistent with the longitudinal medical evidence." Tr. 20. In support, the ALJ noted

---

[1] Even if the court were to find the ALJ erred in light of the post-decision prescription of the cane, the error would be harmless, as the ALJ identified other valid reasons to discredit plaintiff's testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 n.4 (9th Cir. 2008).

plaintiff performed intellectual testing in the average to high average range. *Id.*, 303-04. Testing also indicated plaintiff had mild depression symptoms and moderate anxiety symptoms. Tr. 302-03. The ALJ further noted plaintiff was able to attend school full time while working and parenting, she interacted appropriately with her treatment providers, and that she frequently uses online social media. Tr. 20.

Plaintiff argues that despite her average scores, she also was assessed in the low-average range for reading fluency, and assessed a GAF score of 55. Pl.'s Br. 15. Plaintiff further contends the testing is not completely relevant because she is not alleging an intelligence deficit. Pl.'s Reply 2; tr. 308-09. However, plaintiff alleges she has difficulty understanding, concentrating, and following directions, but her overall reading scores in reading, math, written language, and academic skills, applications, and fluency are all within the average range. Tr. 303-04. As such, the ALJ's reasoning is specific, clear and convincing, even if the test results could be alternatively interpreted. *Batson*, 359 F.3d at 1198. (ALJ's reasonable findings must be upheld, even where the evidence is capable of more than one rational interpretation).

Plaintiff also asserts that "[a]lthough [she] has been observed to be pleasant, her providers have noted obvious signs of mental and physical distress that affect her social functioning." Pl.'s Br. 16. She alleges this would also "make it difficult to respond appropriately to supervision and co-workers." Pl.'s Reply 3. While some of her providers noticed symptoms of depression and/or anxiety at times, the ALJ noted none of the providers indicated her behaviors would preclude her from social interaction. Tr. 20. The ALJ also noted plaintiff regularly used online social media, which impugns the veracity of her claims of very limited social functionality. *Id.* Again, while plaintiff has an alternative interpretation of the evidence, the ALJ provided a legally sufficient reason to discredit allegations of severely diminished ability to socially function and interact with individuals at work.

12 - OPINION AND ORDER

In addition, although the ALJ did not specifically invoke the opinions of the mental health providers who administered her intellectual testing, the court notes their opinion that her "communication skills should serve her well in the career of her choice." Tr. 306. Plaintiff's argument that her strong interpersonal communication skills are not inconsistent with having difficulty responding appropriately to supervision and co-workers is not persuasive. Pl.'s Reply 3. Thus, although the court may not rely on grounds the ALJ did not address in his opinion, plaintiff has nonetheless failed to rebut the ALJ's reasonable interpretation of her mental limitations. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted). The ALJ's credibility finding is therefore affirmed.

## II.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the medical opinions provided by treating physicians Dr. Ward and Dr. Hume-Rodman. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Nonetheless, treating or examining physicians are owed deference and will often by entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). On this record, Drs. Ward and

13 - OPINION AND ORDER

Hume-Rodman's opinions were contradicted by the non-examining state agency medical examiners.[2] Accordingly, the ALJ's reasons for rejecting the treating physicians must be specific and legitimate, and supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical record, prior inconsistent testimony, or inconsistency with a claimant's ADLs. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008).

The ALJ accorded "little weight" to treating provider Dr. Ward's opinion that plaintiff could not maintain full-time employment and would likely miss more than two days per month due to pain issues. Tr. 20. In support, the ALJ noted Dr. Ward's opinion is "inconsistent with the objective evidence, including the physical findings . . . [and] claimant's own reported ability to do household chores, such as laundry and mowing the lawn, as well as her reported ability to be independent in self-care, to prepare simple meals, and to go shopping." *Id.*

The ALJ's first rationale is erroneous. The Commissioner concedes that a lack of objective medical evidence is insufficient to discredit a medical opinion regarding fibromyalgia. Def.'s Br. 12 n.6 (citing *Benecke*, 379 F.3d at 594). Even though the ALJ proffered other reasons for discrediting Dr. Ward's opinion, the Commissioner declines to defend the ALJ's rationale, which generally may be valid so long as other valid rationales are also provided. *Id.* The Commissioner's choice to abandon the argument is presumably due to the ALJ's lack of specificity. The general assertion that a treating physician's opinion is "inconsistent with the objective evidence" is insufficient. The ALJ has a duty to provide more than a conclusion; "[h]e must set forth his own interpretations and explain why they, rather than the doctor', are correct."

---

[2] The parties dispute whether Dr. Zhu's opinion contradicts those of Drs. Ward and Hume-Rodman. *See* Def.'s Br. 11; Pl.'s Reply 5. The ALJ's decision does not indicate whether Dr. Zhu's opinion is included in the weighing of medical opinion evidence. However, neither party's arguments hinge on the medical opinion or evidence produced by Dr. Zhu. Therefore, the court declines to specifically determine whether Dr. Zhu's opinion contradicts those of Drs. Ward and Hume-Rodman.

14 - OPINION AND ORDER

*Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725). Moreover, Dr. Ward noted "multiple areas of significant tenderness to palpitation, consistent with trigger points[,]" in other words, objective evidence consistent with fibromyalgia. *See* tr. 497. Additionally, to the extent the ALJ's rationale is premised on Dr. Ward's "abnormal gait" diagnosis, the ALJ's explanation is too vague to uphold on review.

The ALJ's second rationale for according limited weight to Dr. Ward's opinion is inconsistency with plaintiff's reported ADLs. Tr. 20. As noted above, inconsistency with ADLs may be a valid reason to accord a medical opinion limited weight. *Tommasetti*, 533 F.3d at 1040. Although the ALJ notes plaintiff retains the ability to perform household chores, prepare simple meals, self-care, and go shopping, such activities are not particularly strenuous, particularly in a non-work setting where they can be performed at a slower pace, and presumably not eight hours per day, five days per week. *See, e.g., Fair*, 885 F.3d at 603 (many home activities are not easily transferable to the workplace environment, where it may not be possible to rest). Further, Dr. Ward specifically opined plaintiff would be unable to maintain a full-time job with "normal break periods." Tr. 501. Thus, while plaintiff's ability to perform certain ADLs may suggest non-disability, the ALJ failed to identify how and why the ADLs cited impugn Dr. Ward's assessment. Accordingly, the ALJ erred in weighing Dr. Ward's opinion.

The ALJ also accorded "little weight" to the opinion of Dr. Hume-Rodman, citing inconsistency with the medical record, and plaintiff's abilities to attend school full-time, care for her children, and work. Tr. 20. For the reasons discussed above, the ALJ's rationale regarding inconsistency with the medical record is erroneous. The activities cited by the ALJ, however, are somewhat different than those invoked to reject Dr. Ward's opinion, and therefore warrant further consideration.

Dr. Hume-Rodman, identified as the associate director of clinical health services at Oregon State University, opined plaintiff "suffers from a number of medical issues that make it impossible for her to work 20 hours per week," in the context of a request the university waive a work requirement in order to receive food stamps. Tr. 435. The Commissioner argues Dr. Hume-Rodman appears to be asserting plaintiff could not work 20 hours per week while also attending classes. Def.'s Br. 11. However, as plaintiff accurately contends, the ALJ did not invoke this reasoning in his decision, and therefore this court may not now rely upon it. *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225-26 (9th Cir. 2009); *see also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2007).

However, the ALJ's finding that plaintiff's ability to attend school full-time, work, and care for children is inconsistent with a limitation to a less than 20-hour work week is valid. In support, the ALJ cited Exhibit 6F, which consists of 73 pages of chart notes completed by Dr. Hume-Rodman between 2010 and 2012, when plaintiff was a full-time student. *See* Pl.'s Reply 6; tr. 314, 336, 386  Although plaintiff argues her activities are "very limited," the ALJ's conclusion that plaintiff's ability to raise three children while attending school full-time and working part-time is supported in the record, and reasonably contradicts the doctor's assertion that she is unable to work 20 hours per week. The ALJ is the appropriate arbiter of conflicts and/or ambiguity in the medical record. *Morgan*, 169 F.3d at 603 (citations omitted). As such, the ALJ's rational interpretation of the record must be upheld. *Batson*, 359 F.3d at 1198.

### III. Step Five and Remand for Further Proceedings

Plaintiff alleges the ALJ incorporated erroneous step three findings into her RFC which resulted in further errors at step five. Essentially, plaintiff restates her earlier arguments regarding the ALJ's evaluation of her credibility and the weight accorded to her treating physicians. *See* Pl.'s Br. 18-19; Pl.'s Reply 7. However, as the court finds the ALJ did not err in

16 - OPINION AND ORDER

assessing plaintiff's credibility or the medical opinion of Dr. Hume-Rodman, plaintiff's step five allegations are inapposite. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Finally, plaintiff argues the court should reverse and remand this case for immediate payment of benefits. Courts may affirm, modify, or reverse the decision by the Commissioner "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *Treichler v. Comm'r or Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Remand for the calculation of benefits is one possible remedy. *Benecke*, 379 F.3d at 593. As discussed above, the ALJ did not provide legally adequate reasons to accord Dr. Ward's medical opinion little weight. Although not all ALJ errors require remand, the court can confidently conclude that no reasonable ALJ, when fully crediting Dr. Ward's opinion that plaintiff would be expected to miss more than two days per month due to her impairments, could have reached a different disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (citations omitted). Thus, remand is required.

On remand, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d at1020. Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether

17 - OPINION AND ORDER

the claimant is disabled under the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted).

The first requisite is met based on the ALJ's inadequate rejection of Dr. Ward's opinion. Next, the court must determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. Although the ALJ erred by providing inadequate reasons for according little weight to Dr. Ward's opinion, the record nonetheless raises crucial questions about the extent to which plaintiff's various symptoms and impairments affect her ability to function in the workplace.

For example, despite plaintiff's testimony that her pain is incessant and severely limits her ability to sleep, she also reported receiving significant pain relief and improved sleep using medical marijuana. Tr. 259, 476. Next, as discussed above, plaintiff's providers did not report any abnormality in plaintiff's gait until after the ALJ questioned her credibility because her cane was not medically prescribed. Tr. 23, 258, 476, 506, 525. Further, as Dr. Ward noted, plaintiff's MRI findings did not correlate to her left-sided symptoms, although her disc protrusion is right-sided. Tr. 524.

Other inconsistencies also give the court pause. Although plaintiff alleges mental impairments including limited reading fluency, she was nevertheless able to adequately navigate two years of college courses, and even held a job tutoring other college students for a time. Tr. 42, 249. Further, plaintiff testified that she spends up to three hours per day using online social media, which clearly requires a certain level of reading fluency. Tr. 50-51, 256. While plaintiff alleges having a limited ability to respond appropriately to supervision and co-workers due to emotional distress, mental health evaluators indicated plaintiff demonstrated strong interpersonal communication skills, "that would serve her well in the career of her choice." Tr. 306; Pl.'s Br. 16. Further, despite allegations of significantly limited ability to perform basic ADLs, plaintiff

18 - OPINION AND ORDER

was able to attend school full-time for approximately two years, while raising three children and apparently working part-time. Finally, the court reiterates that although the ALJ did not provide legally sufficient reasons to discredit one treating physician's somewhat conclusory opinion that plaintiff would miss at least two days per month, the ALJ's negative credibility finding and rejection of the other treating physician's opinion were legally valid.

For all of the foregoing reasons, despite legal error in the ALJ's decision, serious doubt remains whether plaintiff is disabled under the Act. Thus, remand for an award of benefits is not appropriate. *Treichler*, 775 F.3d at 1101. Further proceedings are necessary.

## *Conclusion*

Based on the foregoing, the Commissioner's decision is REVERSED and this case REMANDED for further proceedings consistent with this Opinion.

DATED this 5th day of May, 2016.

Youlee Yim You
United States Magistrate Judge